## *EX PARTE* KNIGHT.

### *IN RE* PAULK v. PAULK.

After the master had made report to the court of his sale under a previous order of the court, and of the non-compliance of the purchaser, the master's powers under that order were exhausted; and a second sale, made with the consent of the purchaser pending a rule against him to show cause, was without legal authority.

Before PRESSLEY, J., Union, July, 1887.

This was a petition by Mary E. Knight and Roberson & Gimball in the case of Isaac Paulk *et al.* against Beulah Paulk *et al.* The petition states the case.

*Messrs. D. Johnson, jr.,* and *D. A. Townsend,* for appellant.

*Messrs. William Munro* and *C. C. Culp,* contra.

April 17, 1888.   The opinion of the court was delivered by Mr. Justice McGowan.   The principal case was an action to partition the lands of Uriah Paulk, who had died intestate, among his heirs at law.   Under an order of court the lands were sold by the master in three parcels on the first Monday of January, 1883.   As to one of the parcels, the terms of sale were complied with ; but as to the home place, 179 acres, and parcel No. 2, 123 acres, the terms of sale were not complied with.   They were bid off by one G. B. Hogan for the heirs, as stated.  Matters stood in this condition until salesday in December, 1884, nearly two years, when the two tracts bid off by Hogan were, without any new order of sale, offered a second time.   At this sale Isaac K. Paulk, one of the heirs, bid off both tracts, the home place for $1,000, and tract No. 2 for $700, as alleged, for his sister, Beulah E. Paulk, who was then a minor, attaining her majority eight days after the sale.   She afterwards intermarried with W. D. Humphries, who was dissatisfied with the price at which the lands were bid off for his wife; and he sought to bring about a resale.

The bid not being complied with, the master reported the facts to the court in June, 1885, and an order was made by the court requiring the purchaser, I. K. Paulk, to show cause why he had failed to comply.   He failed to show cause, but on December 23, 1885, filed with the master his written consent that the two tracts should be resold at his risk ; and the master, pending the proceeding to enforce Paulk's bid, and without any new order of sale, again offered the lands for sale in January, 1886, three years after the first sale, and the time therefor indicated in the only order of sale ever made.   Before this third sale the master announced that the terms must be complied with immediately or

a resale had.   S. J. Knight, the husband of one of the heirs, who had run up the property at the second sale to $1,700, was present at this sale, instructed to run it to the same amount; but says that he refrained from bidding on account of the unusual announcement that the terms would have to be complied with immediately.

It also appeared that Roberson & Grimball held a mortgage on I. K. Paulk's interest in the lands, and that before the sale he (Paulk) informed them that they need not be uneasy about getting their money, as he had a friend who told him he would make the land bring what it was worth, $1,700; but for this Grimball would have attended the sale and bid on the land.   I. K. Paulk attended the sale, but did not bid.   After the sale I. K. Paulk informed Grimball that W. D. Humphries was the friend to whom he had alluded as intending to make the land bring its value, $1,700.   Grimball, lulled into security, was not present at the sale.   Prior to the sale I. K. Paulk had assigned his personal property to Mrs. W. D. Humphries.   Her husband, W. D. Humphries, was present at the sale and bid off the land at a grossly inadequate price.   Before the terms were complied with the petitioners, for themselves and the minor heirs, Aubrey and Isabel Gregory, gave the master notice not to make the title to Mr. Humphries; and as he disregarded this notice they instituted this proceeding to have the sale of the lands vacated and set aside.

The cause was referred to S. J. Simpson, Esq., as special referee, who heard the testimony, which is in the Brief, and found, as matter of fact, that Roberson & Grimball had a mortgage of the interest of I. K. Paulk in the lands, which is the first lien thereon; and, as matter of law, that the master did have authority to make the sale of the lands in January, 1886, and that he complied with the terms fixed by the decree; that there was no such combination, unlawful agreement, or chilling of the biddings as would be sufficient to render the sale void, and that the defendant, Mrs. Beulah E. Humphries, is entitled to an order comfirming the sale of the master, &c.

Upon exceptions to this report the cause was argued before Judge Pressley, who "ordered that so much of the report of the

referee as finds that the mortgage security of Roberson & Grimball is the first lien upon the interest of I. K. Paulk in the lands of the intestate, be, and the same is hereby, confirmed, and that in all other respects the report be overruled. It is further ordered that the sales of the two parcels of land heretofore made by the master to the defendant, Beulah E. Humphries, be, and the same is hereby, vacated and set aside; and that the master do proceed to resell said lands on the first Monday in October next, or some convenient salesday thereafter, upon the terms set forth in the previous order in the cause," &c.

From this decree Mrs. Beulah E. Humphries appeals upon the following grounds: 1. That his honor erred in holding that the master had no authority to make the sale of January, 1886. 2. That his honor erred in holding that the announcement of the master, just before the sale, that the terms of sale must be complied with immediately, was sufficient to invalidate the sale. 3. That his honor erred in not sustaining the exceptions of the appellant to the ruling of the referee, excluding the declarations of William Munro, Esq., to Beulah E. Humphries, in the presence of the petitioner. 4. That his honor erred in not confirming the conclusions of the referee, that the master had authority to make the sale of January, 1886, and the same was fair, valid, and binding; and that his honor erred in setting aside and vacating the sale, &c.

It is very clear that at the third and last sale of these premises they were bid off for Mrs. Humphries, one of the distributees, at an inadequate price. The petitioners, in their sworn petition, offer to make an advance of fifty per cent. upon the price. It is true, that would only be the misfortune of the other heirs (although some of them are minors), if the final sale was regular, legal, and "with full and fair competition." But if it was not such a sale, then, upon every consideration of propriety and justice, it ought to be set aside and all parties allowed to realize the benefit of a fair sale for proper value. There can be no doubt that the matter was so managed and confused by sales and resales that the lands were finally bid off for Mrs. Humphries (Beulah Paulk) at less that their true value, to the injury of the other heirs and the creditors of I. K. Paulk; but from the view which

the court takes it will not be necessary to go into the evidence upon the question whether enough was done in repressing fair competition at the sale to make out a case of fraudulent agreement or combination to "chill the biddings," and thereby avoid the sale.

As it seems to us, the last sale by the master, in January, 1886, was without legal authority to support the sale, and for that reason alone the judgment below setting it aside should be sustained. There never was but one order of sale in the case, and that bore date as far back as December, 1882, more than three years before the last sale by the master. At the first effort to sell in 1883 there was no sale of the two lots, which were bid in by Hogan "for the heirs." The master seems to have regarded that as no sale, as he offered the lands for sale in December, 1884. At this sale I. K. Paulk bid off the lands, as alleged, for his sister Beulah, Mrs. Humphries, for $1,700. There was no compliance with the terms of sale, and the master reported to the court the sale and non-compliance. Whereupon the court ordered a rule to issue against I. K. Paulk to show cause why he had not complied. He made no return to this rule, but, instead, undertook to give to the master his consent for a resale.

We do not think this was regular or proper, or that the master had the right to accept that consent and proceed with the sale *de novo*. When the master reported the sale and non-compliance, he had discharged his full duty under the original order of sale. The sale ordered, in form at least, had been made. He had reported it to the court, and the court had ordered proceedings to enforce it. All the parties had an interest in that sale, and we do not see that—after the sale was reported and the court had acted on it—the master had the right, at his own pleasure, to give up that sale and to resell at the risk of the purchaser, which, in this case, amounted to nothing, as Paulk is represented to be utterly insolvent. At that stage of the proceedings a resale could only be ordered by a judicial act, and to that the master was not competent. It is argued that the consent of Paulk to a resale was practically a confession of judgment by him. That is not at all certain, for the court might have required Mrs. Humphries to

have complied with the bid claimed to have been made for her. But be that as it may, the court had taken charge of the matter, and the court alone, after hearing all the parties and guarding the rights of infants and married women, could determine the question and make a new order of sale. I. K. Paulk should have made return to the rule and had the matter determined by the court, which might or might not have ordered a resale; and until that was done the master had exhausted his powers given by the order. It is said that the parties did not object. As we understand it, some of them always insisted upon enforcing the sale, and the minors could not consent.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.